**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

**In re:**                                                          Case No.: 6:20-bk-02586
                                                                    **Chapter 11**
**CSF TECHNOLOGIES, INC**                                            EIN: 22-3882137

      Debtor.
_____/

## CHAPTER 11 CASE MANAGEMENT SUMMARY

**COMES NOW**, **CSF TECHNOLOGIES, INC** ("CSF" or the "Debtor") by and through its undersigned proposed counsel and pursuant to Administrative Order FLMB-2009-1, hereby files this Summary of the Case.

1. On May 6, 2020 (the "Petition Date), the Debtor filed a petition for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code), no trustee has been appointed.

### DESCRIPTION OF THE DEBTOR'S BUSINESS

2. CSF is a Florida corporation incorporated in Florida on March 19, 2015.

3. The Debtor is an Information Technology Solutions Company that provides services, and products to Federal and Local Government, and commercial enterprises. The Debtor provides proactive management solutions and expert resources to support critical business technologies.

### LOCATION OF THE DEBTOR'S OPERATIONS AND WHETHER LEASED OR OWNED

4. CSF operates from a leased premise located at 3251 Progress Drive, Suite 114, Orlando, FL 32826.

### REASONS FOR FILING CHAPTER 11

1

5. The Debtor commenced this Chapter 11 Case in order to implement a comprehensive restructuring, stabilize its operations for the benefit of its customers, secured creditors, employees, vendors, and other unsecured creditors; and to propose a mechanism to efficiently address and resolve all claims. The filing of this Chapter 11 Case is not the end-result of any strategy or attempt to avoid any lawful responsibilities or obligations. Rather, the Debtor commenced this Chapter 11 Case after a comprehensive review of all realistic alternatives and the consideration and balancing of a variety of factors.

### LIST OF OFFICERS AND INSIDERS AND THEIR SALARIES AND BENEFITS

6. Laurette Gibbs ("Ms. Gibbs") is the President of the Debtor.

7. Ms. Gibbs receives a salary/distribution of approximately $5,000.00 per month, which includes reimbursement for health insurance and automobile expenses. Historically, the Debtor has paid various personal expenses of the Insiders.

### DEBTOR'S ANNUAL GROSS REVENUES

8. The Debtor's estimated annual gross revenue is approximately $250,000.00.

### AMOUNTS OWED TO VARIOUS CLASSES OF CREDITORS

**A. Obligations Owed to Priority Creditors**

9. The Debtor owes the Virginia Department of Taxation approximately $2,486.00 for state taxes.

**B. Identity, Collateral, and Amounts Owed to Secured Creditors**

10. The Debtor owes approximately $83,915.00 to Carahsoft Technology Corporation ("Carahsoft"), which sum is secured by a lien, purportedly, on the Debtor's accounts, accounts receivable, chattel paper, equipment, inventory, and software including source code, of every

nature, kind and description, whether or not affixed to realty, wherever located and whether now owned or hereafter owned or acquired by Debtor, and all Proceeds and Products thereof in any form, all accessories, accessions, additions, attachments, fixtures, parts, replacements, special tools, and substitutions thereto or therefor and all increases or profits received therefrom.

11. The Debtor allegedly owes an unknown amount to Peoplecredit; however, such amount and secured status is disputed. The Peoplecredit's indebtedness is allegedly secured by a lien on accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chooses in action, chattel paper, instruments, documents and other forms of obligations at any time owing to the Grantor arising out of good sold or leased or for services rendered by Grantor, the proceeds thereof and all of Grantor's rights with respect to any goods represented thereby, whether or not delivered, goods returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation, together with all customer lists, books and records, ledger and account cards, computer tapes, software, disks, printouts and records, whether now in existence or hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"); Inventory, including without limitation, all goods manufactured or acquired for sale or lease, and any piece goods, raw materials, work in process and finished merchandise, endings or component materials, and all supplies, goods, incidentals, officer supplies, packaging materials and any and all items used or consumed in the operation of the business of Grantor or which may contribute to the finished product of to the sale, promotion and shipment thereof, in which Grantor now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of Grantor or is held by Grantor or by others for Grantor's account (collectively referred to hereinafter as

"Inventory"); Goods, including without limitation, all machinery, equipment, parts, supplies, apparatus, appliances, tools, fittings, furnishings, fixtures and articles of tangible personal property of every description now or hereafter owned by Grantor or in which Grantor may have or may hereafter acquire any interest, at any location (collectively referred to hereinafter as "Equipment").

12.     The Debtor allegedly owes an unknown amount to Corporation Service Company, as Representative ("CSC"); however, such amount and secured status is disputed. The CSC indebtedness is allegedly secured by a lien on the following: all of the Debtor's inventory, including all goods, merchandise, raw materials, supplies and other tangible personal property, now owned or hereafter acquired, and all documents now and at any times covering or representing any of said property; all of Debtor's accounts, accounts receivable, contract receivable, contract rights, notes, drafts, acceptances, instruments, chattel paper, payment intangibles and general intangibles, and all guarantees, and suretyship agreements relating thereto and all security for payment thereof, now and hereafter existing or arising; all of Debtor's equipment, including all furniture, furnishings, machinery, fixtures, storage shelves and other goods used in the conduct of Debtor's business, including, but not limited to, all motor vehicles and rolling stock, now owned or hereafter acquired; other with (a) all increases, parts, fittings, accessories, equipment, special tools, and accessions and accessions now or hereafter attached thereto or used in connection therewith, and any and all replacements of all or any part thereof; (b) any profits now or hereafter acquired from or through any of the forgoing; (c) any products now or hereafter manufactured, possessed assembled or commingled from any of the foregoing; and (d) any and all proceeds received should any of the foregoing be sold, exchanged, collected or otherwise disposed of. the personal property of every kind and nature, including, without

limitation, all accounts, contract rights, rights to the payment of money, insurance claims and proceeds, chattel paper, electric chattel paper, documents, instruments, securities and other investment property, deposit accounts, supporting obligations of every nature, and general intangibles, including without limitation, customer lists, and all books and records related thereto, and all recorded data of any kind and any nature, regardless of the medium of recording; together with, to the extent not listed above as the original collateral, all substitutions and replacements for and products of any of the foregoing property, and together with proceeds of any and all of the foregoing property. This claim may be subject to objection.

    **C.**     **Amount of Unsecured Claims**

13. The Debtor's estimated unsecured claims are approximately $520,944.40; however, some claims may be subject to objection.

### NUMBER OF EMPLOYEES AND AMOUNTS OF WAGES OWED AS OF PETITION DATE

14. CSF does not have employees.

### STATUS OF DEBTOR'S PAYROLL AND SALES TAX OBLIGATIONS

15. CSF does not owe payroll. CSF does not have sales tax obligations.

### ANTICIPATED EMERGENCY/EXPEDITED RELIEF

16. CSF anticipates filing emergency/expedited motions for use of cash collateral, for authority to pay officers salary.

**RESPECTFULLY SUBMITTED**, this 6th day of May 2020.

    /s/ Jeffrey S. Ainsworth_____
    Jeffrey S. Ainsworth, Esquire
    Florida Bar No.: 060769
    E-mail: *jeff@bransonlaw.com*
    **BransonLaw, PLLC**
    Orlando, Florida 32803
    Telephone: (407) 894-6834

                                              Facsimile: (407) 894-8559
                                              Attorney for Debtor

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 6, 2020 a true and correct copy of the foregoing has been furnished via electronic transmission through Bankruptcy Noticing Center to the parties who are currently on the list to receive e-mail notice/service for this case and via regular U.S. Mail to: CSF Technology, Inc., 3251 Progress Drive, Suite 114, Orlando, FL 32826.

                                              /s/ Jeffrey S. Ainsworth_____
                                              Jeffrey S. Ainsworth, Esquire
                                              **BransonLaw, PLLC**